**Richard ROMEO and Darlene Romeo, Plaintiffs/Appellants,**

v.

**Robert E. JONES, et al., Defendants/Respondents.**

**No. ED 83482.**

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 21, 2004.

Richard C. Witzel, David Anthony Dimmitt and Paul K. Travous, co-counsel, St. Louis, MO, for plaintiffs/appellants.

Thomas John Hayek, Darren Edward Daley, co-counsel, Clayton, MO, for defendants/respondents.

SHERRI B. SULLIVAN, P.J.

*Introduction*

Richard Romeo (Mr. Romeo) and Darlene Romeo (Mrs. Romeo) (collectively Appellants) appeal from a trial court judgment entered according to a jury verdict against Appellants and in favor of attorneys Robert E. Jones, Alan Farkas, Robert C. Jones, David M. Korum, and David G. Waltrip (collectively Respondents) on Appellants' Petition alleging abuse of process by Respondents based upon Respondents' representation of a third party in litigation against Appellants. Appellants allege trial court error in the submitted jury instructions, the exclusion of certain evidence, and the dismissal of their punitive damages claim. We affirm.

*Factual and Procedural Background*

In September 1990, Appellants purchased a newly constructed house in Carriage Crossing Place subdivision from Dell Jones and Associates, Inc. (Dell Jones). At the time Appellants purchased the house, Donald R. Jones was the sole officer of Dell Jones. The board of directors consisted of Donald R. Jones, Ronald J. DeRouin (DeRouin), and Jack Elmo. DeRouin conducted business and financial activities for Dell Jones. In 1994, DeRouin was the sole officer and director of Dell Jones.

Appellants were dissatisfied with the construction of their house. Various efforts were made to correct some of the alleged defects, yet Appellants were displeased with the results. After talking with other representatives of Dell Jones, in August 1991, Mrs. Romeo met with DeRouin to address certain repairs that Mrs. Romeo had requested in a letter sent to Dell

Jones in April. Subsequent to this meeting, various efforts again were made to correct some of the alleged defects, yet again Appellants were displeased with the results.

In February 1994, Mrs. Romeo began distributing packets of information at Rockwood Forest subdivision, being developed by R.J. DeRouin Homes, Inc. (DeRouin Homes). DeRouin was the sole officer and director of DeRouin Homes. Mrs. Romeo also distributed packets at Crystal Creek subdivision, being developed by D.R. Jones & Associates, Inc. (D.R.Jones). The packets included a list of "substandard features" of Appellants' house, proposals for repairs to the house, and correspondence between Appellants and their homeowner's insurance company, DeRouin, the Better Business Bureau, and the Attorney General of Missouri. Mr. Romeo was aware of and agreed with his wife's activities.

In April 1994, Robert E. Jones, DeRouin's attorney, sent a letter to Appellants indicating that they "have been picketing another subdivision which is being developed by Mr. DeRouin and another corporation, unrelated to Dell Jones & Associates, Inc." In August 1994, Mrs. Romeo distributed packets at Carriage Crossing Phase II, being developed by DeRouin Homes.

In August 1994, DeRouin Homes, through its attorneys Robert E. Jones and Alan Farkas (Farkas) of the law firm Jones, Korum, & Jones, filed a Petition for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction (DeRouin Homes Lawsuit I) against Appellants. The petition requested that Appellants be ordered "to refrain from making any public statements concerning [DeRouin Homes'] professional aptitude and/or any public statements which tend to suggest that [DeRouin Homes] is in any

way responsible for any alleged defects in [Appellants'] residence and that [Appellants] be ordered to refrain from coming within one hundred feet of any real property owned by or developed by [DeRouin Homes]." The trial court granted the temporary restraining order.

In September 1994, Appellants filed a Motion to Dismiss the DeRouin Homes Lawsuit I arguing, among other things, that the allegations and the temporary restraining order violated Appellants' First Amendment rights. The trial court granted the motion and gave DeRouin Homes thirty days in which to file an amended petition.

In October 1994, DeRouin Homes, again through its attorneys Robert E. Jones and Farkas, filed an Amended Petition for Damages alleging slander and libel (DeRouin Homes Lawsuit II) against Appellants. The petition asserted that "[a]ny and all statements made by [Appellants] which state or imply that [DeRouin Homes] is in any way responsible for the construction of their house or any of the alleged construction problems in their house, as well as any statements which state or imply that [DeRouin Homes] is in any way incompetent or unprofessional are false statements with no basis in fact."

For about a year, the parties engaged in written discovery and depositions. During this time, houses in the Rockwood Forest and Carriage Crossing Phase II subdivisions continued to be sold. In November 1995, DeRouin Homes voluntarily dismissed the DeRouin Homes Lawsuit II without prejudice.

In September 1996, Appellants filed a Petition alleging abuse of process and malicious prosecution (Romeo Lawsuit I) against DeRouin and DeRouin Homes based upon the DeRouin Homes Lawsuit. In July 1998, Appellants settled the Romeo

Lawsuit I and executed a Release against DeRouin, DeRouin Homes, Donald R. Jones, Jack Elmo, Dell Jones, Dell Properties, Inc., D.R. Jones, and Gateway Properties, Inc.[1] Subsequently, the trial court dismissed the Romeo Lawsuit I without prejudice for failure to prosecute. Also in July 1998, Appellants filed a Satisfaction of Judgment for a Petition for breach of warranty and breach of implied warranty of fitness filed against Dell Jones.

In August 1999, Appellants filed a Petition alleging abuse of process (Romeo Lawsuit II) against Respondents based upon the DeRouin Homes Lawsuit. Respondents filed an Answer denying the allegations and raising several affirmative defenses, including res judicata and collateral estoppel and settlement and release.

In January 2001, Respondents filed an Amended Motion for Summary Judgment arguing that (1) Appellants were barred from bringing the action because they split their claim in that they litigated the exact same claim against Respondents' clients; and (2) Appellants could not provide sufficient and competent evidence to support each required element of a claim for abuse of process. The trial court granted Respondents' motion without specifying its reasoning, and Appellants appealed from the summary judgment. In February 2002, we entered an opinion reversing the summary judgment and remanding for further proceedings. *Romeo v. Jones*, 86 S.W.3d 428 (Mo.App. E.D.2002).

Subsequently, Respondents filed a Motion for Rehearing and/or Transfer to the Missouri Supreme Court, which we denied. However, the Missouri Supreme Court ordered the case transferred, but ultimately retransferred the appeal back to this court, at which time our original opinion was reinstated.

Accordingly, the case proceeded to a jury trial. At the close of Appellants' evidence, the trial court granted Respondents' Motion for Directed Verdict as to Appellants' claim for punitive damages. After a five-day trial, the jury returned a verdict in favor of Respondents. The trial court entered a judgment in accordance with the jury verdict. Subsequently, Appellants filed a motion for new trial, which the trial court denied. Appellants now appeal from the trial court judgment entered according to the jury verdict

*Discussion*

Appellants raise five points on appeal.

*I. Verdict–Directing Instructions*

In their first point, Appellants argue that the trial court erred in submitting verdict-directing Instructions 7, 8, 11, and 12 and in refusing proffered verdict-directing Instructions 7A, 8A, 11A, and 12A (collectively the "A" instructions). Appellants maintain that the "A" instructions are correct statements of the law of abuse of process and that Appellants presented substantial evidence that Respondents acted for the improper purpose of using discovery to obtain information from Appellants to be used in a different lawsuit.

1. We note that the Release provided the following:

    This release shall not release any attorney who participated in, or assisted in the preparation, filing or prosecution of, the cause styled *R.J. DeRouin Homes, Inc. v. Darlene Romeo and Richard Romeo*, nor shall this release apply to release any law firm or entity with which such attorneys engaged in the practice of law. Without limitation, included in persons and entities NOT RELEASED are: Robert E. Jones; the law firm of Jones, Korum & Jones; Alan L. Farkas; the law firm of Jones, Korum, Waltrip & Jones; and any persons being partners in such law firms.

■ Whether or not a jury was properly instructed is a question of law. *First State Bank of St. Charles, Missouri v. Frankel*, 86 S.W.3d 161, 173 (Mo.App. E.D. 2002). An instruction shall be given or refused by the trial court according to the law and the evidence in the case. Supreme Court Rule 70.02(a). An instruction must be supported by substantial evidence. *First State Bank*, 86 S.W.3d at 173. Substantial evidence is evidence which, if true, is probative of the issues and from which the jury can decide the case. *Id.* A party is entitled to an instruction on any theory supported by the evidence. *Id.* When an instruction is disjunctive, all submissions must be supported by substantial evidence. *Foster v. Barnes–Jewish Hosp.*, 44 S.W.3d 432, 435 (Mo.App. E.D.2001). Refusal of a disjunctive paragraph in a verdict directing instruction, even one that is supported by the evidence, is not grounds for reversal unless the failure to submit the instruction materially affected the outcome of the case. *Id.* When a party claims the trial court erred in refusing an instruction, we view the evidence and reasonable inferences therefrom in the light most favorable to the submission of the instruction and disregard contrary evidence. *First State Bank*, 86 S.W.3d at 173. We will not reverse a verdict due to instructional error, including the refusal to give an instruction, unless the error was prejudicial. *Id.*

■ The elements of an abuse of process claim are: (1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an illegal purpose in exercising such illegal, improper, perverted use of process; and (3) damage resulted. *Muegler v. Berndsen*, 964 S.W.2d 459, 462 (Mo.App. E.D.1998).

Instruction 7A provided:

Your verdict must be for plaintiff Darlene Romeo on her claim for abuse of process and against defendants Robert C. Jones, David Korum, David Waltrip and Robert E. Jones if you believe:

First, that defendant Robert E. Jones, filed and prosecuted the lawsuit styled *R.J. DeRouin Homes, Inc. v. Darlene and Richard Romeo* for either of the following improper purposes:

(a) to silence Darlene Romeo from making truthful statements concerning her house and Ronald J. DeRouin's professional aptitude and building standards so as to allow Ronald J. DeRouin to sell homes he was building through his company R.J. DeRouin Homes, Inc.; or

(b) to conduct discovery to obtain information to be used for defending Dell Jones in the event Romeos filed a lawsuit against Dell Jones;

Second, that defendant Robert E. Jones thereby made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process, and

Third, that plaintiff Darlene Romeo was thereby damaged.

Instructions 7A, 8A, 11A, and 12A are identical except that Instructions 7A and 8A submitted the claim of Mrs. Romeo for the actions of Robert E. Jones and Alan Farkas, respectively, and Instructions 11A and 12A submitted the claim of Mr. Romeo for the actions of Robert E. Jones and Alan Farkas, respectively. The trial court refused to give these instructions, but rather, the court gave Instructions 7, 8, 11, and 12, which were also offered by Appellants.

Instruction 7 provided:

Your verdict must be for plaintiff Darlene Romeo on her claim for abuse of process and against defendants Robert C.

Jones, David Korum, David Waltrip and Robert E. Jones if you believe:

First, that defendant Robert E. Jones, filed and prosecuted the lawsuit styled *R.J. DeRouin Homes, Inc. v. Darlene and Richard Romeo* for the improper purpose of silencing Darlene Romeo from making truthful statements concerning her house and Ronald J. DeRouin's professional aptitude and building standards so as to allow Ronald J. DeRouin to sell homes he was building through his company R.J. DeRouin Homes, Inc.; and

Second, that defendant Robert E. Jones thereby made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process, and

Third, that plaintiff Darlene Romeo was thereby damaged.

Instructions 7, 8, 11, and 12 are identical except that Instructions 7 and 8 submitted the claim of Mrs. Romeo for the actions of Robert E. Jones and Alan Farkas, respectively, and Instructions 11 and 12 submitted the claim of Mr. Romeo for the actions of Robert E. Jones and Alan Farkas, respectively.

The instructions submitted by the trial court differ from the "A" instructions only in that they do not include the illegal purpose element in the disjunctive (the first paragraph (b) in the "A" instructions).

As substantial evidence to support the submission of the discovery theory presented in the disjunctive "A" instructions, Appellants refer to a letter written by Farkas to DeRouin in February 1995 that stated: "The bulk of the discovery is directed at establishing a defense for you should the Romeos follow-up on their threats to file suit based on the alleged construction defects." Portions of Farkas's deposition testimony were read to the jury,

including his answer to what he meant by the statement in the letter:

Well, I recall that the Romeos through you were threatening to maintain some type of action against either DeRouin Homes, Inc., or Dell Jones & Associates for their problems that they experienced with their house. One way or another those problems would become an issue in this litigation, so whether they tried to file a counterclaim against DeRouin Homes, Inc., or brought in Dell Jones & Associates as a third party or if those issues just remained part of the background for the lawsuit, those issues were all intricate and part of the pending litigation filed by DeRouin Homes, Inc., and Romeo.

Farkas was then asked if it was his intention to be conducting discovery for the purpose of providing the defense in the event the Romeos filed suit for damages to their house, to which he replied:

I think the intent was to be proactive, was to anticipate that there may be something coming up that we would need to respond to as part of the pending litigation, and at the same time that by obtaining this information now at this juncture rather than wait to go see what was happening we would have more information and be better prepared to address the current allegations in the pending lawsuit.

We do not find in this evidence an intention to use the discovery process for an illegal purpose, and therefore Appellants have not shown substantial evidence to support the discovery theory presented in the disjunctive "A" instructions. Accordingly, the trial court did not err in refusing to submit the "A" instructions. Appellants' point one on appeal is denied.

## II. Exclusion of Evidence

Because Appellants' second, third and fifth points on appeal all concern the exclu-

sion of evidence by the trial court, we address the points together. Appellants argue that the trial court erred in excluding the following evidence: (1) a group exhibit of fourteen photographs depicting the condition of various portions of the drywall inside Appellants' house; (2) the dollar amounts from the written estimates for the cost of repairs to Appellants' house and the text portion of a letter from Appellants' homeowner's insurance company denying coverage for repairs to drywall in their house because the condition was the result of inadequate workmanship or construction, which were included in the packets distributed by Appellants; and (3) Mrs. Romeo's interrogatory answer number four completed for discovery during the DeRouin Homes Lawsuit II.

■■■ The admission or exclusion of evidence is within the sound discretion of the trial court. *Rankin v. Venator Group Retail, Inc.*, 93 S.W.3d 814, 819 (Mo.App. E.D.2002). Where evidence is excluded, the issue is whether or not the trial court abused its discretion, not whether the evidence was admissible. *Misischia v. St. John's Mercy Medical Ctr.*, 30 S.W.3d 848, 865 (Mo.App. E.D.2000). A trial court abuses its discretion when the ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicates a lack of careful consideration. *Boyer v. Sinclair & Rush, Inc.*, 67 S.W.3d 627, 634 (Mo.App. E.D.2002). We give substantial deference to the trial court's decision to admit or exclude evidence because of its superior opportunity to evaluate the proffered evidence in the context of the trial. *Misischia*, 30 S.W.3d at 865. We will affirm the trial court's evidentiary ruling unless there is a substantial or glaring injustice. *Uxa ex rel. Uxa v. Marconi*, 128 S.W.3d 121, 130 (Mo.App. E.D.2003). To reverse, we must find that the trial

court's error in excluding evidence was prejudicial and not harmless and that the error materially affected the merits of the action. *Whitworth v. Jones*, 41 S.W.3d 625, 627 (Mo.App. E.D.2001). A ruling within the trial court's discretion is presumed correct, and the appellant bears the burden of showing abuse of discretion and prejudice. *Boyer*, 67 S.W.3d at 634.

### A. Drywall Photographs

■■■ The trial court sustained Respondents' objection to the admission of the group of photographs based on relevancy. Respondents argued that the photographs were irrelevant because the claim was for abuse of process not for a warranty against a home builder. Respondents also argued that the issue in the DeRouin Homes Lawsuit II was not the truthfulness of Appellants' statements regarding the condition of their house, but rather to whom Appellants were attributing the condition, namely, a company that did not build their house.

■■■ The trial court has discretion to determine whether or not evidence is relevant, and we will not reverse its ruling absent an abuse of that discretion. *Uxa*, 128 S.W.3d at 130. To determine relevancy, the question is whether or not the evidence offered tends to prove or disprove a fact in issue or corroborates other evidence. *Id.* We conclude that the trial court did not err in excluding the drywall photographs because the specific condition of Appellants' house was not in issue, and therefore not relevant, at the abuse of process trial.

The foundation for Appellants' abuse of process lawsuit is the DeRouin Homes Lawsuit. As alleged in the petitions, the essential purpose of the DeRouin Homes Lawsuit was not to challenge the truthfulness of Appellants' statements regarding the condition of their house, but rather to

challenge the directly or indirectly identified entity responsible for that condition.[2] In other words, the issue was not the content of the statements but rather against whom those statements were directed. Robert E. Jones testified that he did not know whether or not the house conditions alleged by Appellants were true because the activities Respondents sought to enjoin were the incorrect and untrue inference that the alleged defects were the result of DeRouin Homes. Additionally, Appellants already had obtained a judgment against Dell Jones for breach of warranty. Therefore, the specific condition of Appellants' house was irrelevant to the abuse of process trial, and the trial court did not abuse its discretion in excluding the photographs depicting the condition of various portions of the drywall inside Appellants' house.

Assuming, *arguendo*, that the drywall photographs should not have been excluded, we find no prejudice to Appellants resulted from their exclusion because the trial court permitted Appellants to present other evidence of the condition of their house. For example, Mrs. Romeo testified that they had problems with their home as soon as they moved in, including an improperly hung basement door, freezing pipes, a sagging kitchen floor, and extensive damage to the drywall. Photographs of some of these problems were admitted into evidence. Additionally, a redacted version of the packet of materials distributed by Appellants was admitted into evidence and included a detailed list of complaints regarding the condition of Appellants' house. Thus, at most, the exclusion of the photographs was harmless error.

### B. Packet Materials

The trial court sustained Respondents' objection to the admission of certain portions of the packet based on relevancy, and redacted those portions as identified above. We agree that the redacted portions were irrelevant to the issue at trial. Again, the foundation on which the abuse of process claim was based was the DeRouin Homes Lawsuit, the purpose of which also was addressed above. The dollar amounts from the written estimates for the cost of repairs to Appellants' house would provide a basis for damages for a breach of warranty, which was not at issue in the case. The text portion of the letter from Appellants' homeowner's insurance company denying coverage for repairs to drywall in their house because the condition was the result of inadequate workmanship or construction also speaks to the condition of Appellants' house. Therefore, the materials redacted from the packet were irrelevant to the abuse of process trial, and the trial court did not abuse its discretion in excluding the evidence.

Assuming, *arguendo*, that the materials redacted from the packet should not have been excluded, we find no prejudice to Appellants resulted from their redaction because the trial court permitted Mrs. Romeo to identify the documents contained in the packet, including the estimates for repairs and the letter. Thus, at most, the exclusion of the materials was harmless error.

### C. Interrogatory Answer

Mrs. Romeo's interrogatory answer number four consisted of six typed, single-spaced pages detailing the construction or workmanship defects at Appellants' house. Respondents again objected based

---

**2.** Appellants state that the petitions allege that Appellants' statements regarding the condition of their house were false. However, we read the petitions to allege that Appellants' statements connecting DeRouin Homes to the condition of their house were false.

on relevancy, and the trial court sustained Respondents' objection. The trial court redacted the six pages from the remainder of Mrs. Romeo's answers to interrogatories, which were admitted into evidence. Appellants argue that interrogatory answer number four should have been admitted as evidence of damages to Appellants in light of the time and effort expended in preparing the answer.

Even if the trial court erred in redacting interrogatory answer number four, we find no prejudice resulted to Appellants. Mrs. Romeo testified as to Appellants' time and effort in preparing the answer. She also described the format of interrogatory answer number four. The information provided by Mrs. Romeo's testimony was relevant to damages for abuse of process; the detailed list of defects at Appellants' house was not relevant.

The excluded evidence identified in Appellants' points two, three, and five addresses the specific condition of Appellants' house or repairs for such condition. This evidence was irrelevant to the abuse of process trial. Further, we find no substantial or glaring injustice resulted from the trial court's evidentiary rulings. Thus, the trial court did not abuse its discretion in excluding the evidence. Accordingly, Appellants' points two, three, and five on appeal are denied.

*III. Dismissal of Punitive Damages Claim*

In their fourth point on appeal, Appellants argue that the trial court erred in granting Respondents' Motion for Directed Verdict at the Close of Plaintiffs' Evidence as to Appellants' claim for punitive damages.

In reviewing a directed verdict granted in favor of a defendant, we view the evidence and permissible inferences most favorably to the plaintiff, disregard contrary evidence and inferences, and determine whether or not the plaintiff made a submissible case. *Morehouse v. Behlmann Pontiac–GMC Truck Serv., Inc.,* 31 S.W.3d 55, 57 (Mo.App. E.D.2000). Directing a verdict is a drastic remedy, and we will reverse the trial court's grant of a directed verdict unless the facts and any inferences therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ as to a result. *Id.*

Before punitive damages can be considered, a plaintiff must present clear and convincing evidence of evil motive and reckless indifference to the plaintiff's rights. *Misischia,* 30 S.W.3d at 866. Generally, evidence is clear and convincing if it instantly tilts the scales in the affirmative when weighed against the evidence in opposition and if it causes the fact finder to have an abiding conviction that the evidence is true. *Lopez–Vizcaino v. Action Bail Bonds, Inc.,* 3 S.W.3d 891, 893 (Mo. App. W.D.1999). A plaintiff must prevail on his or her underlying claim to submit punitive damages to the jury. *Misischia,* 30 S.W.3d at 866. Punitive damages are an extraordinary and harsh remedy and should be applied only sparingly. *Id.*

We conclude that the trial court did not err in directing a verdict on Appellants' claim for punitive damages because Appellants did not prevail on their underlying abuse of process claim. The jury found insufficient evidence to support a verdict against Respondents for abuse of process, and therefore the jury legally could not find sufficient evidence for punitive damages, even if the claim had been submitted. Appellants do not argue that any of the (properly) excluded evidence addressed in their points above would have justified the submission of their punitive damages claim.

Accordingly, Appellants' point four on appeal is denied.

### Conclusion

The judgment of the trial court is affirmed.

ROBERT G. DOWD, J., and BOOKER T. SHAW, J., concur.